INTERSTATE COMMERCE COMMISSION v. PHILADELPHIA & R. RY. CO. et al.

(Circuit Court, S. D. New York. June 12, 1903.)

1. INTERSTATE COMMERCE COMMISSION—PROCEEDINGS BEFORE—COMPELLING PRODUCTION OF EVIDENCE.

In a proceeding before the Interstate Commerce Commission on the petition of an individual against certain railroad companies alleging discrimination and the charging of unreasonable and unjust rates for the carrying of anthracite coal, in violation of the interstate commerce law, a coal company, the entire stock of which is owned by one of defendant railroad companies, may properly be regarded as the latter's agent in making contracts, and may be required to produce contracts or evidence with respect to contracts made with third parties when they have any relation to transportation charges, but such contracts, which are merely for the purchase of coal at prices therein fixed, are not relevant to the issues, and their production cannot be required.

2. SAME.

In such a proceeding evidence relating to a combination between defendants in restraint of trade or to the fixing of prices for coal sold is not pertinent to any issue, nor to any matter which the commission has jurisdiction to try, and its production cannot be compelled.

Petition by the Interstate Commerce Commission for an order requiring witnesses before it to produce certain documents and to answer certain questions.

Henry L. Burnett, U. S. Atty., and Clarence J. Sheaen, for petitioner.

John G. Johnson, Walter N. Ross, Adelbert Moot, George F. Brownell, and Francis I. Gowen, opposed.

LACOMBE, Circuit Judge. All parties pressed the court for an early decision, and it was understood that adjournments were being taken to await its action. Therefore it seems best merely to indicate the conclusions reached, without going into any discussion of the grounds for such conclusion.

It appears from the record that William R. Hearst heretofore duly filed a petition and complaint against the defendants, alleging (1) that the freight rates charged by them for the transportation of anthracite coal are unreasonable and unjust; (2) that said rates are relatively unreasonable and unjust as compared with the rates charged for transportation of bituminous coal and with the rates for other car load freight generally; (3) that defendants have combined to pool and divide among themselves freights and freight traffic of anthracite coal; and (4) that they have discriminated against private operators of coal mines by charging them a higher rate of freight than charged other private operators or coal companies owned by said defendants—all in violation of the interstate commerce act.

Answers having been interposed, the commission duly ordered a hearing upon this complaint, and upon such hearing certain witnesses declined to produce specific documents or to answer specific questions, wherefore petitioner prays for an order or orders requiring the production of such documents and answers to the questions.

It would appear from the decision of the Supreme Court in the Brimson Case, 154 U. S. 447, 14 Sup. Ct. 1125, 38 L. Ed. 1047, that upon application for such an order the Circuit Court does not sit as an appellate tribunal, but should decide all questions raised as to relevancy of testimony as if such questions were raised before it in the first instance.

There are several witnesses proceeded against, although for convenience their cases have been heard together on a single petition. Separate orders, however, should be made in each case, for each case is a separate proceeding instituted in this court against the particular individual.

Among the objections advanced to the granting of this petition, it is contended that the Interstate Commerce Commission has no jurisdiction to hear the complaint for the reason that the complainant is not himself a shipper of coal. It was contended in opposition that the commission is conducting a general investigation into the conduct of the business of transportation by the defendant carriers, which it has a right to do under the statutes, independent of any complaint by a person aggrieved. The record, however, does not sustain this proposition. The proceeding before the commission was begun by the serv-

ice of a formal verified complaint, to which separate answers were interposed by the several defendants. The petition presented to this court avers that the refusals to produce documents and answer questions took place in the course of "a hearing upon said complaint" which the commission had duly ordered. The prosecution of the complaint before the commission is being conducted, as it is most appropriate that such a prosecution should be, by the counsel for the complainant.

In view of the language of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), there is great force in the contention that the prosecution before the Interstate Commerce Commission of carriers who violate the statutes should be at the instance of a shipper, and that an individual who merely purchases merchandise, the price of which is advanced by reason of its including the cost of transportation from the place of production to the place of sale, may not institute and prosecute such a proceeding where no shipper raises any objections to the rates charged. In view of the other grounds of objection which have been interposed, however, it will not be necessary to decide this question.

The specific points raised in each case are as follows:

(1) In the case of David G. Baird, secretary of the Lehigh Valley Coal Company, it is asked that he be required to produce "all contracts for the purchase and transportation of anthracite coal entered into since January 1, 1901, between that company and any producers of anthracite coal or owners or operators of coal mines." In opposition it is suggested that the Lehigh Valley Coal Company is a corporation independent of any of the defendants, and that the contracts asked for are between it, a third party, and other outsiders. It appears by the record that the capital stock of the Lehigh Valley Coal Company is all owned by the Lehigh Valley Railroad Company, and it may fairly be contended that its transactions, if not those of an agent of the railroad company, were conducted solely in its interests. The contract, or at least one of the contracts, asked for, has been produced and submitted to the court, and it does not provide, as indicated in the petition, that the "prices paid to the seller are certain percentages of the prices for which the coal is sold at tide-water terminals." It is entirely a contract of purchase, and does not deal at all with the subject of transportation. It fixes the price which the Lehigh Valley Coal Company is to pay the seller for coal at a certain percentage of the price at which coal of the same quality and size shall be sold during the month at a specified place. It is in no way different from a contract for the purchase of a specified number of tons of coal at a specified sum in dollars and cents—a contract made in the state of Pennsylvania, and to be completed therein by the delivery of coal at the breakers. Whether the Lehigh Valley Coal Company is to be considered as an independent corporation, or whether in the transaction it is to be taken as the alter ego of the railroad company, and the coal bought under the contract be treated as the coal of the railroad company, this particular contract is not relevant to the questions of reasonable rates, discrimination, etc., which were presented by the complaint. The petition to direct the production of this contract is therefore denied. If, however, there are any contracts in the possession

of the witness which deal with the subject of transportation as well as with the subject of purchase they should be produced.

(2) In the case of Fred F. Chambers, secretary of the Delaware, Lackawanna & Western Railroad Company, the contracts referred to have been submitted to the court, and as in the other case they appear to be all contracts of purchase only. The order to produce is therefore denied.

(3) In the case of Orlando C. Post, auditor of the Delaware, Lackawanna & Western Railroad Company, it appears that the original vouchers asked for show the transactions for the purchase of coal under the contracts last referred to, and contain no information whatsoever on the subject of transportation. The motion to require their production is denied.

(4) In the case of George O. Waterman, secretary of the Lehigh & Wilkesbarre Coal Company, the contracts appear to be all contracts of purchase only, and the petition is denied.

(5) In the case of ———— Richardson, secretary of the Hillside Coal & Iron Company and of the Pennsylvania Coal Company, the motion for order to produce is denied for the same reason.

(6) In the case of William G. Brown, secretary of the Philadelphia & Reading Coal & Iron Company, the motion to produce the contracts is denied for the reasons given above.

(7) In the case of E. D. Sturges, secretary of the Dolph Coal Company, the Clarence Coal Company, and the Pine Hill Coal Company, the motion for an order requiring the production of the contracts of purchase is denied for the reasons above expressed.

(8) In the case of Edgar C. Hebbard, secretary of the Guaranty Trust Company of New York, an order is asked requiring the production of several contracts referred to in the petition and upon the argument as the Temple Iron Company contracts. It appears that heretofore certain coal operators and coal companies which were not owned or controlled by the defendants, being dissatisfied with the freight rates or with the manner in which the business of transportation was being conducted, came together for the purpose of building or securing the building of a new road from the coal regions where their mines were located to tide water. The defendants, being unwilling to meet the competition which such a new road would introduce, combined together, and bought up the collieries of those who were promoting the new road. Thereupon the project of building such competing road was abandoned. The contracts in question are parts of the machinery by which this combination prevented the building of the new road. If the defendants were being prosecuted under the Sherman anti-trust act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1900, p. 3200]), for having entered into a combination, agreement, or contract in restraint of trade, the contracts in question would be relevant testimony. This, however, is not a prosecution under the anti-trust act, nor is the Interstate Commerce Commission the forum before whom such a prosecution is conducted. The contracts seem to be irrelevant to the proceeding under this complaint, and the motion to require their production is denied.

(9) In the case of the witness George F. Baer, the motion to require him to produce the Temple Iron Company contracts is denied.

(10) In the case of the witness Eben B. Thompson, the following questions were put:

"(1) Bearing in mind your testimony that you do not believe in reckless competition, did you also conduct the business of selling coal in accordance with those same ideas so as to avoid what you regard as reckless competition?

"(2) Who fixes the price of the coal of the Lehigh Valley Coal Company that is sold at tide water?

"(3) Who fixed the price of the coal of the Hillside Coal & Iron Company and the Pennsylvania Coal Company that was sold at tide water during your connection with those properties?

"(4) Are the prices of anthracite coal at tide water fixed by agreement between the presidents of these different coal companies?"

The motion to require answers to these questions is denied on the grounds that they relate wholly to the sale of coal, and not to its transportation.

(11) In the case of the witness William H. Truesdale, the witness was asked, "What elements or expenses are included in the item $91,321.65 for general expenses?" He declined to answer. Inasmuch as the document containing that item is in evidence before the commission, the witness should answer this specific question.

The following questions were also asked of the same witness:

"(1) Who sells your coal on commission?

"(2) Do you consider that twenty cents a ton commission that you have charged here against the cost and expenses of mining is a fair and reasonable charge for commissions?

"(3) You maintain a sales department of your own at the city of New York, don't you?

"(4) Do you sell anthracite coal at tide water?

"(5) What is the price of coal to-day sold by the D., L. & W. at tide water?

"(6) What has happened to make the advance? Has there been any change that you know of in the supply of coal since yesterday?

"(7) Have you observed any change in the demand for coal since yesterday?

"(8) Has the cost of producing coal gone up any since yesterday?

"(9) Who fixes the price of Delaware, Lackawanna & Western coal at tide water?

"(10) How do you account for the fact that the price circulars are uniform, if there is no agreement?

"(11) Don't you know from your experience and knowledge of the business that the increase in wages will not make a difference of over fifteen cents a ton in the cost of producing anthracite coal?"

The motion to require answers to these questions is denied.